WILLIAM A. ESTEY

*vs.*

WILLIAM R. WHITNEY.

WILLIAM R. WHITNEY

*vs.*

WILLIAM A. ESTEY.

Somerset.   Opinion July 7, 1914.

*Contract.   Fraud.   Mortgage.   Rescission.   Representation.   Sale.   Waiver. Warranty.*

1.  It is undoubtedly the law that a party who is defrauded by false representations, in the sale of property, upon discovery of the false representations, is entitled to the right to rescind the contract.
2.  If he would rescind by reason of the fraud, he must do so within a reasonable time after the discovery of the fraud.
3.  When he has once elected to rescind, or not to rescind, he must abide by his decision.
4.  If the party who is defrauded by false representations, made to induce him to enter into a contract, after having knowledge of the fraud and false representations continues to retain the property and does not notify the seller of his election to rescind within a reasonable time, without excuse, this of itself affords proof of an election to abide by the contract, which is irrevocable, except of course by mutual consent.

On motions by defendant to set aside the verdicts in both cases.

Motion in each case overruled.

These two actions were tried together before a jury at the September Term, 1913.   The plaintiff in the action of *Estey* v. *Whitney*, sued to recover the sum of fifteen hundred dollars and interest paid by plaintiff to defendant in part performance of an oral contract for the purchase of a farm, which contract the plaintiff claims he

rescinded, because of false representation made by the defendant in the course of the negotiations, by which he was defrauded.

In the case of *Whitney* v. *Estey*, the plaintiff sued to recover the sum of two hundred dollars for wintering defendant Estey's cattle and horses during the season of 1910-1911.

The general issue was pleaded in both cases, and in the case of *Estey* v. *Whitney*, the jury returned a verdict for the plaintiff of $1797.62, and in the case of *Whitney* v. *Estey*, the jury returned a verdict for the defendant. The defendant filed a motion for a new trial in both cases.

The case is stated in the opinion.

*Augustine Simmons*, for William A. Estey.

*Fred F. Lawrence*, for William R. Whitney.

SITTING: SAVAGE, C. J., SPEAR, KING, HALEY, HANSON, PHILBROOK, JJ.

HALEY, J.  Two actions of assumpsit, tried together at the September Term, 1913, in Somerset County.

The writ of *Estey* v. *Whitney* contains a count alleging an oral agreement by the plaintiff to purchase of the defendant a farm in Emden; that the defendant represented and warranted that the farm contained four hundred acres of intervale land, islands and some upland, and that the defendant represented that the year before the purchase the farm pressed out one hundred and two tons of hay and, in addition, that there was other hay in the barn on said farm; that the plaintiff believed said statements and representations and, relying upon them, entered into an oral agreement for the purchase of said farm and certain hay, farm products, farming machinery, etc., for the sum of eight thousand dollars, and paid, as a part of the purchase price, five hundred dollars, and was to pay a further sum of three thousand dollars when he took possession of said premises; that on the fourth day of May the plaintiff paid one thousand dollars more towards the purchase price and agreed to get other money within a short time, and that the plaintiff took possession of said farm on said day, and that the defendant waived the payment of the other two thousand dollars due at that time; that the plaintiff continued to keep said premises under said agreement, and, on the 25th day of July, 1910, gave the defendant his

promissory note for said sum of two thousand dollars, being the balance of the amount to be paid when the plaintiff took possession, and secured the payment of the same by a mortgage of all the hay then in said barn and all the growing crops, including grain and potatoes and personal property bargained for with said farm, and that the defendant then and there promised the plaintiff that, after the payment of said note, he would give the plaintiff a deed of said farm and the title to the personal property aforesaid; that the plaintiff afterwards delivered to the defendant between sixty-three and sixty-four tons of hay of the value of nine hundred and forty-five dollars, and some pressed straw of the value of twenty-five dollars, and eleven hundred barrels of potatoes of the value of fifteen hundred dollars, less some items of credit for pressing and phosphate; that the statement of the amount of hay raised on said farm was false and fraudulent and was craftily made to induce the plaintiff to purchase said farm; that the year previous said farm only pressed out between eighty-five and eighty-six tons of hay; that said farm did not contain four hundred acres, but a much smaller number, to wit, three hundred acres; that the plaintiff relied upon the warranty and representations made to him concerning the acreage of said farm and the amount of hay pressed from it the year previous and other allegations of what the defendant did upon said premises, and that said contract was rescinded by the plaintiff within a reasonable time after his discovery of said false and fraudulent representations. Under said count the plaintiff sought to recover the sum of money paid by him as aforesaid, and to recover back the value, if negotiated, of said note of two thousand dollars.

The writ also contains the common counts for goods sold and delivered, money had and received and for money found to be due upon an account stated between them, and a specification that under the above counts the plaintiff would seek to recover the same amount alleged to be due on the first count of the declaration.

The writ of *Whitney* v. *Estey* contains an account annexed alleging the indebtedness to the plaintiff in the sum of two hundred dollars, the account annexed being, "To wintering your cattle and horse at Emden during the season of 1910 and 1911, $200."

In the first case the verdict was for the plaintiff for $1797.62, and in the second case the verdict was for the defendant.

It is admitted that both verdicts must stand or fall, according to the correctness of the finding of the jury upon the issue of the rescission of the contract for the purchase of the farm.

In the case of *Estey* v. *Whitney*, the evidence shows that the plaintiff and the defendant entered into a contract in the early spring of 1910 for the sale to the plaintiff by the defendant of the farm owned by the latter, together with the farming tools and machinery, for the sum of eight thousand dollars; that the plaintiff paid five hundred dollars down and was to pay three thousand dollars more in June or July, and that when the said three thousand dollars were paid the defendant was to give to the plaintiff a deed of the farm and take back a mortgage for the unpaid balance of forty-five hundred dollars; that of the three thousand dollars the plaintiff paid one thousand in cash, thus making in all a cash payment of fifteen hundred dollars, and agreed that he would, in a short time, obtain from his home in New Brunswick the money to pay the balance. The plaintiff went into possession of the premises and cultivated and used them, under the terms of the agreement. It was proved by the testimony of the court surveyor, and uncontradicted, that the farm, including the islands, contained only three hundred acres instead of four hundred, and the plaintiff discovered that only eighty-five to eighty-six tons of hay were pressed from the farm the year before the purchase, although, as he claimed and testified, the defendant represented the farm as containing at least four hundred acres, and pressed the year before one hundred and two tons of hay, in addition to some loose hay in the barn.

The plaintiff claims that, on the 25th day of July, 1910, he rescinded the contract, or attempted to rescind it, because of the false representations of the defendant as to the acreage and the quantity of hay cut the year previous; and on said 25th day of July the plaintiff executed a mortgage of the growing crops and the personal property upon the premises to the defendant to secure the payment of a two thousand dollar note that day given by him to the defendant as the balance of the three thousand dollar payment that the plaintiff had agreed to pay when he entered into possession of the premises.

The defendant denies that there was any rescission, or attempted rescission, but contends that the giving of the note and mortgage was an election by the plaintiff to stand by the contract, and that, having made that election, he was bound by it and could not afterwards

rescind the contract.    In explanation of the note and mortgage the plaintiff testified that the defendant represented at that time that he, the plaintiff, was mistaken in regard to the amount of hay he would cut that season, and stated to him that he was not half done haying and, in substance, asked him to wait and investigate further before rescinding the contract, and that he did not, at that time, know the amount of the shortage of the land.

It is undoubtedly the law that a party who is defrauded by false representations in the sale of property, upon the discovery of the false representations, is entitled to the right to rescind the contract, and that, if he would rescind by reason of the fraud, he must do so within a reasonable time after the discovery of the fraud, and that, when he has once elected to rescind, or not to rescind, he must abide by his decision, and that the party who is defrauded by false representations, made to induce him to enter into a contract, after having knowledge of the fraud and false representations, if he continues to retain the property and does not notify the seller of his election to rescind within a reasonable time, without excuse, that of itself affords plenary proof of an election upon his part to abide by the contract, which is irrevocable, except of course by mutual consent.    To entitle the plaintiff to a verdict it was incumbent upon him to prove, (1) the fraud of the defendant upon which he, the plaintiff, relied in the making of the contract, (2) that he rescinded the contract within a reasonable time.    The defendant does not urge his motions upon the grounds that he was not guilty of fraud, upon which the plaintiff relied. The jury having passed upon that question, it is admitted that there is sufficient evidence in the case to authorize the jury to find the fraud complained of.

It is the claim of the defendant that, by the giving of the note and mortgage for two thousand dollars on the 25th of July, 1910, the plaintiff not only elected not to rescind the contract, but that he also waived the right to rescind; that at that time he had all the knowledge it was necessary for him to have to know the fraud and misrepresentation of which he claims the defendant was guilty, and, if he did know, and executed the mortgage and the note as a part payment on the contract of purchase, he not only did not rescind the contract, but waived the right to rescind.    But it is the contention of the plaintiff that he did not have full knowledge at that time, and that, at the request of the defendant, he put off the rescission until after he had

cut his hay upon the assurance of the defendant that he was not half through haying, and would have much more hay than he thought he would cut, and that at that time he did not really know the amount of the shortage in the acreage, and if the plaintiff did, at the request of the defendant, postpone his election to rescind until he had made a further investigation, then of course it would not be an election upon his part not to rescind, if further investigation proved that the defendant had falsely represented the acreage, and the amount of hay cut the year before upon the farm. After the transaction of July 25th the plaintiff left for his home in New Brunswick before the haying season was completed, and did not return until September 23rd. The day following his return the parties met, at which time, it is claimed by the plaintiff that there was a rescission of the contract by mutual consent. The plaintiff is corroborated in his statement by the testimony of his wife, who testified that Mr. Estey asked Mr. Whitney for the money back, "and told him we weren't going to stay, and we were going to leave and we wanted the money back, and Mr. Whitney said for us to stay there, and that he was short at that time; he was buying potatoes and he did not have the money and to stay there and do the work and he would pay us for it and would fix it up later—make it satisfactory to us, and would fix the matter up later." The plaintiff testified to the same, and to other conversations of Mr. Whitney of the same tenor, and that, in pursuance of that talk and because of the promise of Mr. Whitney to "fix it up later," he agreed to stay and do the harvesting for the defendant.

The defendant denies the above conversation, and claims that letters and writings of the parties after that date are inconsistant with the arrangements as testified to by the plaintiff and his wife, and that those letters and writings show that no reliance should be placed upon their testimony. The letters and writings, unexplained, do show that there was no rescission on September 23rd, as testified to by the plaintiff and his wife; but they attempt to explain away the construction that the defendant places upon such letters and writings by saying that they related to another trade that the defendant had tried to enter into with them to purchase the farm for five hundred dollars less than the original contract price, and also referred to indebtedness of the plaintiff to the defendant for fertilizer and seed used by him in the planting of the farm, and the crops which, by

arrangement of the parties, were to be the property of the defendant, and the services the plaintiff was performing for the defendant at his request, that most of the letters were written by the defendant, that they were self-serving and purposely worded by the defendant to manufacture evidence that could be used by him if he saw fit to repudiate his contract of rescission.

If the plaintiff and the defendant did mutually agree on September 23rd, to rescind the contract and the defendant took back the property and agreed to settle with the plaintiff for what he had paid and invested in the farm, as testified to, in substance, by the plaintiff and his wife, but denied by the defendant, then of course this action can be maintained by the plaintiff to recover back the amount paid upon the contract, which the defendant, if the testimony of the plaintiff and his wife is true, agreed to pay back, for, although a party who seeks to rescind a contract must do so within a reasonable time after discovering the fraud, and if he does not, or, by his conduct and acts, elects to abide by the contract, he cannot afterwards rescind; yet it is competent for the parties to mutually consent to rescind, and, having mutually agreed to do so, they are bound by their agreement. The only issue of fact in the case is, was there a rescission, by mutual consent, on September 23, 1910? Upon one side there is the positive testimony of the plaintiff and his wife, which they claim is corroborated by their conduct in remaining upon the farm and looking out for the property at the request of the defendant, and upon the other side the denial of their testimony by the defendant, corroborated in part by the testimony of his son, and the letters and papers written and executed by the parties after said date. The testimony of the defendant might be looked upon with suspicion by the jury, as the evidence showed beyond question that he made false representations to the plaintiff to induce him to purchase the farm. It is urged that the defendant artfully wrote the letters and procured the writings which were produced that he might present written evidence to disprove that which he had previously agreed to. The jury saw the parties, they heard the explanations that each gave of their acts and their conduct; they were the proper tribunal to pass upon the question, and they had the right to say that the testimony of the plaintiff and his wife was true in regard to the agreement of the defendant to pay back the money, and to say whether the letters and writings upon which the defendant relies

did not relate to the contract mutually rescinded, but was in reference to another contract that the defendant was trying to enter into with the plaintiff, and that the plaintiff's contention in regard to the writings is the true one. At least, this court cannot say from the reading of the entire testimony that intelligent men could not honestly arrive at this conclusion. That being so, we have no right to substitute our judgment for that of the jury, and, as both cases must stand or fall together, the mandates should be,

*Motions overruled.*